UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-CR-148 |
| | ) | (Phillips / Shirley) |
| VINCENT VALENTINE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. On February 1, 2008, this matter came before the Court for an evidentiary hearing on the defendant's Motion to Suppress Initial Traffic Stop and All Evidence Seized as a Result of the Stop [Doc. 10]. Defendant Vincent Valentine was present with his counsel, A. Philip Lomonaco. The government was represented by Assistant United States Attorney Cynthia Davidson. The Court received the testimony of three witnesses and heard argument on the merits of the motion. On February 2, 2008, the Court took this matter under advisement. For the reasons set forth herein, this Court finds the traffic stop was valid and recommends the motion be denied.

**I. HEARING**

On May 18, 2007, at close to 11:00 p.m., police in Oak Ridge stopped a white sedan driven by Vincent Valentine. Valentine challenges the basis of that traffic stop and the search of the car that followed. Valentine is charged with being a felon in possession of a firearm, a Glock .40 caliber pistol found inside the car.

1

## A) Evidence Before the Court

In support of the stop, the United States presented testimony of three law enforcement officers at the hearing, as follows:

*1. Sergeant Therman Baird*

Direct Examination

The first witness was Sergeant Therman Baird of the Anderson County Sheriff's Office. Baird testified that he was eastbound on Illinois Avenue in the city of Oak Ridge when he saw the white sedan. Baird testified that Illinois Avenue has two lanes of traffic eastbound and two westbound, with one turn lane in the center of the roadway. Baird recalled the car was driving lawfully until it crossed a set of railroad tracks. After that, Baird saw the car "veer off into the center lane." Baird described on the part of the road where this happened the center lane featured a "painted yellow island." The sedan straddled the lane line for about 150 yards, then returned to a normal driving position in the correct lane. Baird testified the sedan drove traveled lawfully in a lane for "a short distance," then returned to straddling the lane line as before. Baird testified that because the sedan had tinted windows and it was night, he could not see into the car. After observing this driving behavior, Baird stopped the car. Baird testified that he approached the driver and explained the reason for the stop was that the car had been weaving into the center turn lane. Baird testified the driver, later identified as Vincent Valentine, explained "that he'd been having problems with his right front tire." Baird testified that as this exchange was going on, he could smell marijuana through the open car window and decided to search the car, during which the pistol at issue was found. Baird testified that after the search of the car, he overheard Valentine tell another officer that he had bought the gun.

## Cross Examination

On cross examination, Baird was asked about the details of the overheard comment. Baird testified that at the police station, he needed some additional information for his intake procedure, so Baird knocked on the door to a room where Valentine was being interviewed by another officer. Baird said he went into the room and overheard the remark. Baird testified that he did not hear Miranda warnings while in the room.

Although a deputy sheriff, Baird was working with the Oak Ridge Police Department "on a round-up," which he described as "we were going to residences of people who had arrest warrants" to take them into custody. Baird was participating in this operation in his own patrol unit which he ordinarily drives. Baird testified that while the Anderson County Sheriff's Office has "two or three" cruisers equipped with in-car camera systems, his is not one of them.

When Baird was asked whether he had been in the Shoney's restaurant parking lot just before he first saw the white sedan, Baird said that he was in the area of Shoney's, but could not say if he was in the parking lot or on a side street. When asked to say what Baird considered "the area" of Shoney's, Baird testified that he meant this to include the street that runs next to the Shoney's parking lot.

Baird described the direction of travel for both his cruiser and the white sedan as "we were heading out of Oak Ridge." Baird estimated it was about a quarter mile from the time he first observed the white sedan until the stop. Baird testified that he did not conduct field sobriety tests on the driver, although the driving behavior could be consistent with a driver driving under the influence of an intoxicant. When asked whether he suspected Valentine of DUI, Baird testified that "I didn't know *what* it was" that precipitated the driving.

3

Baird stated that although the police were going to houses to arrest people with outstanding warrants, he does not believe he was driving to a house at the time he saw the white sedan because the officers were "winding up" the project and that the stop of Valentine's car was not related to the operation. Baird testified that before this incident he had never seen Valentine or this vehicle. Baird was later recalled to the witness stand, as described in Section 4.

## 2. *Deputy Sharon Owens*

### Direct Examination

The second witness called by the government was Sharon Owens, a deputy with the Anderson County Sheriff's Office. Owens testified that her ordinary duties are as a transport officer; she transports persons in jail to and from court and picks up people from other county jails for transport to Anderson County. Owens testified that she participated in the "round-up" operation and was present when Valentine's car was stopped because she was riding in Baird's cruiser. Owens stated that she was on a special assignment and was responsible for searching any females who might be arrested in the operation.

Owens testified that she observed the white sedan "swerve into the lane" and that she saw it "continue to do that several times" before it was stopped. After the sedan was stopped, Owens stayed inside the cruiser as directed by Baird. Owens testified that she did not recall the last place she was before the cruiser was driving behind the white sedan. Owens had been in the car since 6:00 that evening. When asked whether she and Baird had left from Shoney's, Owens testified, "I do believe we stopped there." Owens could not recall the distance from Shoney's to the site of the traffic stop. When asked to give an estimate, Owens responded, "I could guess a quarter mile."

### Cross Examination

On cross examination, Owens testified that she saw the white sedan "swerve in and over the yellow lane" several times, into the turn lane. Owens stated that the white sedan drove past the cruiser before the erratic driving was observed.

### Re - Examination

Upon brief re-examination by both parties, Owens testified that she could see Valentine through the window, clarifying that she could see Valentine through the cruiser window as he got out of his own car. Owens testified that Baird's cruiser did not have an in-car camera.

### 3. Deputy Wiley Arthur Maloney

### Direct Examination

The third witness called by the United States was Anderson County Sheriff's Deputy Wiley Arthur Maloney. Maloney testified that he has been with the Sheriff's Office for five years and before then served as a reserve deputy since 1996. Before that employment, Maloney was an active duty U.S. Marine for 29 years and six months. Maloney observed the white sedan before it was stopped. Maloney testified that he first saw the car as Maloney pulled out of the Shoney's parking lot onto Illinois Avenue behind it. Maloney's attention was drawn to the car because it had a dark window tint. Maloney "started to run the registration" when he heard Sergeant Baird call in the license plate over the radio for a records check.

Maloney testified that he then pulled in behind Baird, who was, in turn, behind the white sedan. Maloney testified that the white sedan drove unremarkably until it passed Lafayette Street and crossed over some railroad tracks. After the railroad tracks, the white sedan "started to swerve over the line." Maloney testified that the car drove over the line for about 100 feet.

5

Maloney assisted in the search of the white sedan. Maloney found a small amount of marijuana behind the glove compartment and a sandwich bag of marijuana inside a pocket compartment built into the backside of the front passenger seat. Then, under the driver's seat, Maloney found a Glock .40 caliber handgun model 27 loaded with a 15 round magazine with one round chambered.

### Cross Examination

On cross examination, Maloney testified that he could not see into the white sedan because of the window tint. Maloney confirmed that the first thing he noticed about the white sedan was the window tint, first noting this feature either as the white sedan passed Maloney's cruiser on the driver's side or as Maloney pulled out of the Shoney's parking lot. Maloney testified that he did not issue a citation for window tint violation and that he did not check the window tint with a field test card.

Maloney said that when he saw Baird activate his cruiser blue lights, Maloney activated his own. Maloney did not call in the license plate because after Baird has called it in, it was Baird's traffic stop. Maloney did help by getting out of his cruiser and helping to search the car. Maloney testified that while both he and Baird were working on the arrest project, they were not specifically working in tandem. Maloney testified that Baird called the license plate in for a records check on the radio as Valentine's car passed Maloney's cruiser.

### Further Questioning

Upon inquiry by the Court, Maloney confirmed that Baird called the license plate in for a records check before observing the white sedan making any traffic violation, and before any swerving. Maloney testified that he could not think of a reason why Baird would do that, but that

if he had not Maloney would have done so because of "the blacked-out windows."

*4. Sergeant Baird*

Direct Examination on Recall

The defense recalled Baird to the witness stand. Baird testified that his cruiser had just passed Maloney's cruiser, which was in the right lane, when Baird called in the license plate for the white sedan. Baird described the relative positions of the three vehicles as the traveled on Illinois Avenue as follows: Valentine was at the front, in the left lane; Baird was behind Valentine about three to four car lengths; Maloney was in the right lane. Valentine and Baird (traveling in the left lane) passed Maloney (traveling in the right lane); then Maloney fell in behind Baird (moving into the left lane).

Baird testified that when he first saw the white sedan: Baird was in the left lane; Maloney was in the right lane; and "we were coming up on his car and we passed him." Valentine's car was at least three car lengths ahead of Baird. Baird did not recall whether he saw Maloney pulling out of the Shoney's parking lot.

Baird testified that he was certain it was he who called in the license plate for a records check, "I am sure I did, that's procedure." When asked why he did so, Baird said that it was "because of the window tint." Baird testified that he first noticed the window tint just before the white sedan drove into the turn lane. Baird estimated this was five minutes or less before he made the traffic stop. Baird testified that he could not see inside the car because of the window tint, but that he did not issue a citation for the tint and did not check it with a field test card.

## B) Argument of the Parties

At the conclusion of testimony Attorney Lomonaco and AUSA Davidson presented argument. Attorney Lomonaco argued that Valentine reports to counsel he was stopped coming out of the Shoney's parking lot. Attorney Lomonaco stated there was no evidence presented that the tint on the white sedan was illegal except the testimony the officers could not see into the car, as none of the officers ever checked it. He further argued that it is illogical to believe that Valentine, who was surrounded by cars and had just passed a cruiser in traffic, would be swerving. Attorney Lomonaco stated that Valentine would testify that he was not swerving. Attorney Lomonaco drew the Court's attention to the testimony that there was no indication Valentine was intoxicated and surmised the police were merely out "looking for suspects" when they arbitrarily stopped the white sedan.

AUSA Davidson argued that the only evidence before the Court is the three eyewitness accounts of the incident and that counsel's statement about what the defendant might testify to is not evidence. AUSA Davidson argued the officers were credible and they described a roadway violation of Tennessee Code Annotated § 55-8-123, which requires motorists to drive within one lane. AUSA Davidson argued that the officers' decision to run the license plate is irrelevant to the issue of the validity of the traffic stop. AUSA Davidson argued the evidence showed these police officers were driving around to area residences to serve outstanding warrants, not driving around stopping cars, as confirmed by the participation of a transportation officer, Owens.

## II. FINDINGS OF FACT

The Court finds the testimony of Sergeant Baird, Deputy Owens and Deputy Maloney was not controverted by evidence or argument at the hearing and their credibility was not impeached. Accordingly, the Court finds that the testimony of these three witnesses was credible and provides an accurate description of the events at issue, and constitutes the facts found in this matter.

## III. ANALYSIS

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. Terry v. Ohio, 392 U.S. 1, 9 (1968); United States v. Cortez, 449 U.S. 411, 417 (1981). The stop of an automobile and the detention of its occupants constitutes a seizure within the meaning of the Fourth Amendment, even if the purpose of the stop is limited and the detention is brief. Whren v. United States, 517 U.S. 806, 809-10 (1996); Delaware v. Prouse, 440 U.S. 648, 663 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 556-58 (1976). Finding that Valentine was seized when his vehicle was stopped by Baird, calling into operation the protections of the Fourth Amendment, the Court must next determine whether that traffic stop seizure was reasonable.

A seizure conducted without a warrant is presumed unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971). Therefore, evidence seized as a result of a search or seizure conducted without a warrant must be suppressed unless the government proves by a preponderance of the evidence that the search was reasonable. Id. Generally, for the seizure of an automobile and occupants to be reasonable, there must be some type of individualized suspicion of wrongdoing justifying the seizure.

If an officer has *probable cause* to believe that a violation of the traffic code has occurred or was occurring, a resultant stop is not unlawful and does not violate the Fourth Amendment. Whren v. United States, 517 U.S. 806 (1996); United States v. Graham, 483 F.3d 431 (6th Cir. 2007); Gaddis ex rel. Gaddis v. Redford Twp., 364 F.3d 763 (6th Cir.2004). This is so even if the stop is a complete pretext for the officer's subjective motivations in making the stop. Whren, 517 U.S. at 813-17; Gaddis, 364 F.3d at 771 n.6. Here, the officers had abundant probable cause.

With respect to the roadway lane violation, on a two lane divided road such as Illinois Avenue was described at the hearing, Tennessee Code Annotated § 55-8-123 provides:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Tenn. Code Ann. § 55-8-123.

The Court finds that Sergeant Baird observed a plain violation of the above statute when he saw the white sedan swerve into the center traffic lane, and do so more than one time. Whether the car traveled 100 feet or 150 yards (as the testimony indicated), the driving constituted a significant roadway violation, and, hence, probable cause for the traffic stop existed.[1] An officer

---

[1] The Court is cognizant that the Tennessee Supreme Court has not read this statute to require flawless travel within a lane, concluding that, "[I]f failure to follow a perfect vector down the highway ... [was] sufficient reason[ ] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." State v. Binette, 33 S.W.3d 215, 219 (Tenn.2000) (quoting United States v. Lyons, 7 F.3d 973, 976 (10th Cir.1993)). Binette also cautions that hyper-technical driving requirements can create a "stop at will" standard violative of the Fourth Amendment. Binette, 33 S.W.3d at 219-20. Accord, State v. Richie 2007 WL 10449 (Tenn.Crim.App., 2007). This case, however, presents no such marginal lane violation for consideration. C.f., United States v. Freeman, 209 F.3d 464 (6th Cir. 2000) (police unjustified to stop a motor home after it was observed once drifting across the fog line onto the shoulder portion of the highway).

who observes a vehicle weaving on the roadway has a legitimate basis for stopping the vehicle. United States v. French, 974 F.2d 687, 691 (6th Cir. 1992), cert. denied, 506 U.S. 1066 (1993); United States v. Pino, 855 F.2d 357, 361 (6th Cir. 1988) (citing same Tenn. Code Ann. statute), cert. denied, 493 U.S. 1090 (1990).

Although Attorney Lomonaco proffered, rather than the defendant testifying, that the defendant would say he was not swerving and that it is illogical to believe the defendant would be swerving, this proffer is belied by three undisputed facts. First, is the unimpeached testimony of all three testifying officers. Despite the discrepancy in the estimate of the distance Valentine actually traveled outside his own lane during his repeated weaving behavior (i.e., feet versus yards), the only challenge to their notably consistent testimony was counsel's proffer. Second, is the undisputed testimony that Valentine offered police his own explanation for his erratic driving based on problems with his right front tire. Third, the smell of marijuana emanating from the passenger compartment as Baird approached the car was undisputed, providing further logical explanation for Valentine's swerving.

Although not raised by Valentine, the Court observes that a traffic stop cannot be unlawfully extended once the applicable traffic citations have been issued, unless the officer has reasonable suspicion to believe that additional criminal activity is afoot. See United States v. Sokolow, 490 U.S. 1, 7 (1989). In this case, after properly stopping Valentine's car, Baird approached the car and smelled marijuana coming from the lowered driver's window. The odor of illicit drugs established probable cause to search the car. United States v. Koger, 152 Fed. Appx. 429, 430-431 (6th Cir. 2005) (affirming this Court's conclusion, adopted by the district court, that "the strong smell of marijuana emanating from the vehicle provided both reasonable suspicion for further investigation

11

and probable cause to search the car"); United States v. Foster, 376 F.3d 577, 588 (6th Cir. 2004) (smell of marijuana coming from vehicle provided probable cause for warrantless search of vehicle citing United States v. Garza, 10 F.3d 1241, 1246 (6th Cir.1993); and United States v. Elkins, 300 F.3d 638, 659 (6th Cir. 2002)); United States v. Goolesby, 968 F.2d 1216 (6th Cir. 1992)( "simply by virtue of detecting the odor of marijuana" officer had probable cause to search car, citing with approval, United States v. Caves, 890 F.2d 87, 89 (8th Cir.1989); and United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989)). It was that search of Valentine's car which revealed the marijuana and firearm. See United States v. Davis, 430 F.3d 545, 554 (6th Cir. 2005) (degree of intrusion reasonably related in scope to the situation at hand).

Because the initial traffic stop was founded on ample probable cause to believe a violation of the Tennessee traffic laws had occurred, and the ensuing search was based upon probable cause to believe the car contained marijuana, the Court finds no basis to suppress evidence seized as a result of the stop.

## IV: CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is **RECOMMENDED** that defendant's Motion to Suppress Initial Traffic Stop and All Evidence Seized as a Result of the Stop **[Doc. 10]** be **DENIED**.[2]

                                              Respectfully submitted,

                                                 s/ C. Clifford Shirley, Jr.
                                                 United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).